**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RONALD A. FERGUSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10 C 113 |
| v. | ) | |
| | ) | **Judge Ronald A. Guzmán** |
| EXELON NUCLEAR, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Pro se plaintiff Ronald A. Ferguson ("Ferguson") has sued defendant Exelon Nuclear[1] ("Exelon") for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and age discrimination and retaliation under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634.[2] Before the Court is Exelon's motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons provided herein, the Court grants the motion.

---

[1] Although plaintiff named Exelon Nuclear as the defendant, Ferguson presumably meant to sue his former employer, Exelon Generation Co., LLC. (Def.'s Mot. Summ. J. 1 n.1.)
[2] Ferguson does not explicitly identify the type of Title VII discrimination in his complaint. However, Ferguson alleges Exelon's discharge decision was not substantiated with proof, (Compl. at 6), and in Ferguson's Response to Motion for Summary Judgment, he states that "[n]ot having proof [to substantiate the termination decision] would only leave racial or age discrimination," (Pl.'s Resp. Def.'s Mot. Summ. J., Tab 1). Thus, this Court treats Ferguson's Title VII complaint as based on race.

**Facts**

Unless otherwise noted, the following facts are uncontested.[3] On February 21, 1990, Ferguson began working for Exelon at the Braidwood Station. (Def.'s LR 56.1(a)(3) Stmt. ¶ 5.) The last position he held was Senior Maintenance Electrician A in the Electrical Maintenance Department, which is part of the bargaining unit represented by Local 15 of the International Brotherhood of Electrical Workers. (*Id.* ¶ 6.) Exelon outlines its standards for employee conduct and its discipline policy in its Employee Standards of Conduct ("ESOC"). (*Id.* ¶ 7.)

Ferguson's history at Exelon includes past disciplinary actions. In 2004, he served a five-day suspension because he admittedly violated ESOC Rule 2 when he refused to participate in an "Out-of-the-Box" evaluation and further yelled at his supervisor, which included the use of profanity. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 8-12.) Another incident occurred on November 11, 2005, when Ferguson grabbed Ted Melcher, another employer, by his shirt and shoved him. (*Id.* ¶ 13.) The ESOC states that a violation of ESOC Rule 26, *i.e.*, "[a]ny act of physical aggression or righting while on the job or in connect with Company business," may result in discharge. (*Id.* ¶ 15.) Ferguson conceded that he violated the ESOC, (*id.* ¶ 16), but instead of firing him, Exelon

---

[3] Local Rule 56.1 requires that the party opposing the motion for summary judgment respond to the moving party's statement of undisputed material facts with specific references to affidavits, the record, or other supporting materials. N.D. Ill. Local Rule ("LR") 56.1(b)(3)(B). Failure to do so results in a court's deeming admitted the moving party's statement of material fact. LR 56.1(b)(3). Moreover, responding that a statement is irrelevant or immaterial does not serve as a denial under Local Rule 56.1, and therefore serves as an admission of the statement. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 818 (7th Cir. 2004) (district court did not abuse discretion in striking responses of "irrelevant" under Local Rule 56.1). Unless otherwise noted, because Ferguson failed to comply with Local Rule 56.1(b)(3), Exelon's statements are deemed admitted.

and Ferguson entered into a Last Chance Agreement, which stated, in part, that "any future verbal or physical altercations by Mr. Ferguson will be deemed proper cause for termination and will result in his immediate dismissal from the company," (*id.* ¶ 19). Ferguson testified that he did not believe he was placed on the Last Chance Agreement because of his age; rather, he was placed on it solely because of his misconduct involving Melcher. (*Id.* ¶ 22.)

During the week prior to September 5, 2008, Ferguson and Mendez had a conflict over a job assignment because Mendez requested that Ferguson perform a job with equipment that had not been properly inspected for safety by an engineer. (Pl.'s Resp. Def.'s Mot. Summ. J. ("Pl.'s Resp.") ¶ 27; Ferguson Dep. 23–27, May 18, 2010.) Mendez became "belligerent" when Ferguson objected to the assignment, and Ferguson eventually completed the assignment. (Ferguson Dep. 25.) Although Ferguson contends that only this one conflict led to his complaining to Exelon's Human Resources ("HR") department on September 5, 2008, (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 27), he admits that Mendez repeatedly picked on him until he finished his job assignments for the week leading up to his HR Complaint. (Ferguson Dep. 30.)

On September 5, 2008, Ferguson visited the HR office with his supervisor, Mike Mendez, to complain that Mendez was harassing him. (Dillon Aff. ¶¶ 14-15, July 27, 2010.) Sandy Malone was the HR employee present, and she states in her affidavit that Ferguson said Mendez was "f***ing harassing him" and making comments when Ferguson walked by him. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 24-25; Malone Aff., July 2010, Ex. 1, Malone Witness Stmt., Sept. 5, 2008.) Although Ferguson made Malone uncomfortable at the meeting with his complaints of harassment, at no time did Ferguson reference age as the basis of the harassment.

(Def.'s LR 56.1(a)(3) Stmt. ¶ 25.)  After Ferguson's visit to the HR office, Exelon's Braidwood management sent him home pending an investigation into his behavior.  (Dillon Aff. ¶ 15.)

The investigation, which included interviewing three employee-witnesses about Ferguson's recent conduct at the time, resulted in Ferguson's discharge decision on October 10, 2008.  (Def.'s LR 56.1(a)(3) Stmt. ¶ 34.)  Dan Burgess, an engineer at Exelon, stated that he heard Ferguson swearing and raising his voice at others on many occasions.  (Dillon Aff., Ex. B3, Burgess Stmt., Oct. 8, 2008.)  He further stated that Ferguson has an anger problem, and that Ferguson took issue with working the back shift, which, although a legitimate gripe, he dealt with inappropriately.  (*Id.*)  Tom Bessman, a first line supervisor at Exelon at the time, also stated that he heard Ferguson swearing and raising his voice at others at work.  (Dillon Aff., Ex. B4, Bessman Stmt., Oct. 8 , 2008.)  Grady Jones, a manager at Exelon at the time, likewise stated that he witnessed Ferguson being loud, interrupting job briefs and cursing.  (Dillon Aff., Ex. B5, Jones Stmt., Oct. 8 , 2008.)  Mendez did not participate in Exelon's discharge decision, but he did provide a written statement describing Ferguson's conduct as inappropriate and insubordinate in the week leading up to Ferguson's HR complaint.  (Dillon Aff. ¶ 19.)  In his statement, Mendez states that on September 4, 2008, Ferguson told him:  "They should kill all Puerto Ricans."  (Dillon Aff., Ex. B2, Mendez Stmt., Sept. 12, 2008.)  This greatly offended Mendez.  (*Id.*)  However, none of the three interviewed witnesses, Burgess, Bessman, or Jones, heard Ferguson make this statement.  (Dillon Aff., Exs. B3-B5.)

On October 15, 2008, Ferguson received Exelon's letter of termination.  (Def.'s LR 56.1(a)(3) Stmt*.* ¶ 34.)  The letter stated that the decision was based on his overall disciplinary

record and his recent behavior toward his supervisor and other employees, which violated Company policy, the ESOC, and his Last Chance Agreement. (*Id.*) Ferguson testified that Richard Gadbois, the Electrical Maintenance Director, selected Ferguson for termination because of his Last Chance Agreement and because he was eager to fire someone—in Ferguson's words, he "wanted everybody to be afraid of him." (*Id.* ¶ 39; Ferguson Dep. 126-27.) Ferguson could not provide any other motive that Gadbois may have had. (Def.'s LR 56.1(a)(3) Stmt. ¶ 39.)

On November 10, 2008, Ferguson filed a charge with the Equal Employment Opportunity Commission ("EEOC") challenging his discharge solely on the grounds of age discrimination and retaliation under the ADEA. (Def.'s LR 56.1(a)(3) Stmt. ¶ 40; Def.'s Ex. A7, EEOC Charge.) After receiving a right-to-sue letter from the EEOC, Ferguson filed a complaint in federal court. (Compl. at 1, 6.)

## **Discussion**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support whether a fact can be or is in genuine dispute, a party must either "(A) cit[e] to particular parts of materials in the record, including depositions, . . . affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or (B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

5

Moreover, the court "construe[s] all facts and draw[s] all inferences in the light most favorable to the non-moving party." *Srail v. Vill. of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). "The existence of merely a scintilla of evidence in support of the non-moving party's position is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Delta Consulting Group, Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009).

## I. Title VII Claims

Title VII "claims brought in judicial proceedings must be within the scope of the charges filed with the EEOC." *Conner v. Ill. Dep't of Natural Res.*, 413 F.3d 675, 680 (7th Cir. 2005). This rule serves two purposes: (1) it allows the EEOC a chance to resolve the dispute, and (2) it puts the employer on notice for the charges against it. *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002). To determine whether a claim is within the scope of an EEOC charge, a court must ask whether the claim is "like or reasonably related to" the EEOC charge and "whether the current claim reasonably could have developed from the EEOC's investigation of the charges before it." *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996). When a complaint raises a different theory of discrimination than was raised in the EEOC charge, a court must be able to infer the different theory of discrimination from the facts alleged in the EEOC charge for the complaint to fall within the scope of the EEOC charge. *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003).

Here, Ferguson marked only age discrimination and retaliation on his EEOC charge. (Def.'s Ex. A7, EEOC Charge.) Furthermore, his EEOC charge contains only a brief summary of his allegations, *i.e.*, that he (1) complained of discrimination while employed at Exelon, (2) was discharged, effective October 10, 2008, and (3) believes he was discriminated against because of his age and retaliated against for engaging in a protective activity in violation of the ADEA. (*Id.*) He neither describes any specific activity that he engaged in that may have been a protected activity, nor provides any details regarding any particular incident of discrimination. (*See id.*)

Because Ferguson affirmatively states in his EEOC charge that his general claims of discrimination and retaliation are *based on age*, a Title VII race discrimination or retaliation claim could not have reasonably developed from the EEOC investigation of the ADEA charges before it. Therefore, Ferguson's Title VII claims are not within the scope of his EEOC charge, and the Court grants Exelon's motion for summary judgment with regard to Ferguson's Title VII claims.

**II.    Age Discrimination**

"To succeed on a discrimination claim under the ADEA, a plaintiff must show that her termination or other adverse employment action would not have occurred 'but for' her employer's motive to discriminate on the basis of her age." *Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1402 (7th Cir. 1996). This may be done in one of two ways: by direct evidence of discrimination or by indirect evidence under the shifting-burden test of *McDonnell*

*Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Id.* Because both methods may utilize circumstantial evidence, the distinction between the two methods is "vague." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 641 (7th Cir. 2008). The distinction turns upon the indirect method's subset of circumstantial evidence—an employer's treatment of similarly situated employees to the plaintiff. *Id.* Under either method, however, a plaintiff must offer "evidence from which an inference of age discrimination may be drawn" in order to defeat a defendant's motion for summary judgment. *Fuka*, 82 F.3d at 1402-03.

Regardless of the method that Ferguson intended to proceed under, his claim for age discrimination is defeated by his admission that his discharge was in no way the result of age discrimination. At his deposition, Ferguson specifically answered "no" to the question "[a]re there any reasons you believe you were harassed or retaliated against because of your age?" (Ferguson Dep. 90; Def.'s LR 56.1(a)(3) Stmt. ¶ 37.) Moreover, in response to defendant's inclusion of this admission in its Local Rule 56.1 Statement of Uncontested Facts, Ferguson affirmatively responds that "[a]ge had nothing to do with it." (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 37.) Instead, Ferguson describes his supervisor Mendez's harassment as "[c]onstantly bickering." (Ferguson Dep. 21-22.) Ferguson states that Mendez picked on him because Ferguson could "only push back so far or [he would] be in violation of [his] Last Chance Agreement." (*Id.* 24-25.) In addition, Ferguson states that Gadbois chose to fire him because of his Last Chance Agreement and because Gadbois was looking to make an example of someone. (*Id.* 126-27.) According to Ferguson, Gadbois "wanted everybody to be afraid of him" because people worked better when they were mad at him. (*Id.*; Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 39.)

Thus, the most favorable inference this Court can draw in Ferguson's favor is that Mendez was an overbearing supervisor that took advantage of Ferguson's tenuous position with Exelon because of his Last Chance Agreement, and Exelon fired Ferguson in order to make an example of him so that other employees would work better. However, without any indication on the record that age discrimination drove the discharge decision, Ferguson's ADEA discrimination claim fails as a matter of law. Therefore, the Court grants defendant's motion for summary judgment with regard to Ferguson's ADEA age discrimination claim.

**III.    ADEA Retaliation**

In order for Ferguson to make out a *prima facie* case of age retaliation, he must have engaged in a statutorily protected activity. Section 623(d) of the ADEA provides that an employer shall not discriminate against an individual because it opposed a practice made unlawful by the ADEA or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." In addition to engaging in a statutorily protected activity, a plaintiff must have been meeting his or her employer's legitimate business expectations, must have suffered an adverse employment action, and the employer must have treated other similarly situated employees who did not engage in a protected activity more favorably. *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002); *Alexander v. Biomerieux, Inc.*, 485 F. Supp. 2d 924, 934 (N.D. Ill. 2007). Here, Ferguson alleges that he was retaliated against for turning in Mendez to HR for harassment. (Ferguson Dep. at 111; Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 42.)

9

In *Trammel v. Simmons First Bank of Searcy*, 345 F.3d 611, 615 (8th Cir. 2003), the Eighth Circuit highlighted the difference between protected and unprotected activity. In affirming summary judgment for the defendant on an ADEA retaliation claim, the court held that the plaintiff did not engage in a statutorily protected activity when he wrote letters to agencies accusing the defendant-bank of improper loan procedures because the letters were not opposing age discrimination. *Id.* On the other hand, the court held that the plaintiff's filing of an ADEA retaliation charge with the EEOC was a protected activity that could potentially serve as the basis for his claim, although the claim ultimately failed. *Id.*

Ferguson's case follows that of the plaintiff in *Trammel*. Akin to complaining about improper loan procedures, Ferguson complained to HR that Mendez was harassing him by requiring him to perform work with unsafe equipment, but his HR Complaint was not in opposition to age discrimination. (Ferguson Dep. 21–30, 111.) Not only did Ferguson fail to complain about age discrimination to HR but Ferguson further subverts his retaliation claim by affirmatively stating that Mendez's harassment was not based upon age, but upon job disputes and his Last Chance Agreement. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 36–37; Pl.'s LR 56.1(b)(3)(A) Stmt. ¶¶ 36–37; *see also* Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 22 (stating Ferguson did not believe he was placed on the Last Chance Agreement because of his age; rather, he was placed on it solely because of his misconduct involving Melcher). Therefore, Ferguson did not engage in a statutorily protected activity when he complained to HR about harassment. Furthermore, Ferguson's EEOC charge cannot be the basis for retaliation. Ferguson was notified of his discharge on October 15, 2008, (Ferguson Dep. 20), but he did not file his EEOC charge until

November 11, 2008, (Def.'s Ex. A7, EEOC Charge). It is therefore impossible for Exelon to have discharged him in retaliation for his EEOC charge because his discharge preceded his EEOC charge. Thus, as a matter of law, Ferguson cannot make out a *prima facie* case of retaliation under the ADEA because he did not engage in any protected activity that relates to his discharge from Exelon. Accordingly, the Court grants Exelon's motion for summary judgment with regard to Ferguson's retaliation claim under the ADEA.

## Conclusion

For the foregoing reasons, the Court grants Exelon's motion for summary judgment [doc. no. 33]. This case is hereby terminated.

SO ORDERED                        ENTERED: March 30, 2011

_____
**HON. RONALD A. GUZMAN**
**U.S. District Court Judge**